# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                                                              CRIMINAL ACTION NO. 3:10-00039

CHARLEY GOLDEN MYERS

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Charley Golden Myers' Motion to Dismiss. [Doc. No. 30]. The Court held a hearing on the motion on June 1, 2010. Upon consideration of the arguments and briefs of the parties, the Court **DENIES** the motion.

Defendant was indicted on February 24, 2010, for knowingly possessing a firearm, as defined in 26 U.S.C. § 5845(a), that is, a destructive device, also known as a Molotov Cocktail, which was not registered to him in the National Firearm Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871. In his Motion to Dismiss, Defendant argues that the indictment must be dismissed because the device he is charged with possessing is not capable of

being registered and, therefore, the penalty imposed by 26 U.S.C. §§ 5681(d)[1] and 5871[2] have no relationship to the taxing power of Congress.

In support of his motion, Defendant cites *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992), and *United States v. Rock Island Armory, Inc.*, 773 F. Supp. 117 (C.D. Ill. 1991). In *Dalton*, the defendant was found guilty of violating 26 U.S.C. § 5861(d), prohibiting the receipt or possession of an unregistered firearm, and subsection (e) of § 5861,[3] prohibiting the transfer of a firearm in violation of Chapter 26. The transfer provision requires, inter alia, the transferor to apply for the transfer and registration of the firearm to the transferee and to pay a transfer tax. 960 F.2d

---

[1]Subsection (d) provides in full: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[.]" 26 U.S.C. § 5861(d).

[2]Section 5871 provides: "Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871.

[3]Subsection (e) states, in full: "It shall be unlawful to . . . to transfer a firearm in violation of the provisions of this chapter[.]" 26 U.S.C. § 5861(e).

at 122 (citing 26 U.S.C. § 5812[4]).  These provisions were passed under the National Firearms Act (NFA), a part of the Internal Revenue Code.

---

[4]Section 5812 provides:

> **(a) Application**.--A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary; (2) any tax payable on the transfer is paid as evidenced by the proper stamp affixed to the original application form; (3) the transferee is identified in the application form in such manner as the Secretary may by regulations prescribe, except that, if such person is an individual, the identification must include his fingerprints and his photograph; (4) the transferor of the firearm is identified in the application form in such manner as the Secretary may by regulations prescribe; (5) the firearm is identified in the application form in such manner as the Secretary may by regulations prescribe; and (6) the application form shows that the Secretary has approved the transfer and the registration of the firearm to the transferee. Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law.
>
> **(b) Transfer of possession**.--The transferee of a firearm shall not take possession of the firearm unless the Secretary has approved the transfer and registration of the firearm to the transferee as required by subsection (a) of this section.

26 U.S.C. § 5812.

In 1986, Congress passed 18 U.S.C. § 922(*o*),[5] as an amendment to the Gun Control Act, which made it unlawful for anyone to transfer or possess any machinegun created after May 19, 1986, the statute's effective date. In *Dalton*, it was uncontested "that the government . . . [would] not permit the registration of machineguns covered by section 922(*o*), and will not accept the tax which would otherwise be required by the registration requirements of the National Firearms Act." *Id*. Given the machinegun at issue in *Dalton* was created after the effective date of § 922(*o*), the Tenth Circuit determined that the defendant could not be convicted under § 5861(d) or (e) for failing to register his machinegun because compliance was impossible under § 922(*o*). *Id*. at 126.

As an alternative ground, the Tenth Circuit also relied upon the reasoning found in *Rock Island Armory*, *Inc*. In that case, the Illinois district court found the government could no longer prosecute crimes under § 5861 for possession of a machinegun made after § 922(*o*)'s effective date. The court reasoned that, because the NFA was passed as a taxing statute as part of the Internal Revenue Code and the government would no longer accept registration and tax on those

---

[5]Section 922(*o*) provides, in part:

> Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> **(2)** This subsection does not apply with respect to--
>
> **(B)** any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(*o*), in part.

machineguns, "[t]he enactment of 18 U.S.C. § 922(*o*) in 1986 removed the constitutional legitimacy of registration as an aid to tax collection. . . . Thus, § 922(*o*) undercut the constitutional basis of registration which had been the rule since *Sonzinsky* [*v. United States*, 300 U.S. 506 (1937)]."[6] 773 F. Supp. at 125. In agreeing with *Rock Island Armory, Inc.*, the Tenth Circuit also stated that, although some revenue could "be generated by taxing the illegal *making* of a machinegun," it did "not legitimize the registration requirements for possession and transfer at issue in the instant case." 960 F.2d at 125.[7]

However, this Court recognizes that *Rock Island Armory, Inc.* can no longer be considered good law as its reasoning was rejected by the Seventh Circuit in *United States v. Ross*, 9 F.3d 1182, 1192-94 (7th Cir.1993).[8] Likewise, *Dalton* has been universally rejected. *United States*

---

[6] The district court found that, in *Sonzinsky*, the United States Supreme Court upheld the validity of the NFA as "a revenue measure only and did not purport to exercise any general criminal power not delegated to Congress by the Constitution." *Id.* at 121.

[7] 26 U.S.C. § 5821 creates a "making tax." This section provides, in full:

> **(a) Rate.**--There shall be levied, collected, and paid upon the making of a firearm a tax at the rate of $200 for each firearm made.
>
> **(b) By whom paid.**--The tax imposed by subsection (a) of this section shall be paid by the person making the firearm.
>
> **(c) Payment.**--The tax imposed by subsection (a) of this section shall be payable by the stamp prescribed for payment by the Secretary.

26 U.S.C. § 5821.

[8] *Vacated on other grounds*, 511 U.S. 1124 (1994).

*v. Bournes*, 105 F. Supp.2d 736, 739 (E.D. Mich. 2000) (noting "other circuits have uniformly declined to endorse the Tenth Circuit's analysis in *Dalton*"). Instead, *Ross* and the other circuit courts have adopted the reasoning of the Fourth Circuit's decision in *United States v. Jones*, 976 F.2d 176 (4th Cir. 1992). *Bournes*, 105 F. Supp.2d at 739 & 745 n.3.

Shortly after *Dalton* was decided, the Fourth Circuit in *Jones* had the opportunity to consider a conviction under the NFA in light of § 922(*o*). In *Jones*, the defendant was convicted under the NFA for possessing, transferring, and transporting in interstate commerce machineguns in violation of the act. 976 F.2d at 177. Citing *Dalton*, the defendant argued he could not be convicted under the NFA because of the effective ban under § 922(*o*) in dealing with machineguns after May of 1986. *Id*. at 182. The defendant argued that § 922(*o*) either implicitly repealed the machine gun provisions in the NFA or "cannot be enforced without constituting fundamental unfairness in violation of his Fifth Amendment right to due process." *Id*. at 183 (citation omitted). He further argued that the NFA "cannot be enforced because it has lost its constitutional basis as a taxing provision." *Id*. (citation omitted).

In rejecting the defendant's argument that § 922(*o*) effectively repealed the relevant provisions of the NFA, the Fourth Circuit recognized: "'In the absence of some affirmative showing of an intention to repeal, the only permissible justification for repeal by implication is when the earlier and later statutes are *irreconcilable*.'" *Id*. (quoting *Morton v. Mancari*, 417 U.S. 535, 550 (1974) (emphasis added in *Jones*). Upon considering the statutory language and legislative history of the Gun Control Act's 1986 amendment, the Court found nothing indicating "a congressional

desire to except machine guns from the earlier established requirements of the National Firearms Act." *Id*. The Fourth Circuit also found, contrary to *Dalton*, that the statutes are not irreconcilable as the defendant could have complied "with both acts by refusing to deal in newly-made machine guns." *Id.* (citation omitted).

As compliance with both acts is possible, the Court further ruled against the defendant's fundamental unfairness argument. *Id*. The Court noted there is nothing unconstitutionally unfair about Congress' decision to pass § 922(*o*) and effectively make the possession of certain machineguns automatic violations of both the NFA and the Gun Control Act. Moreover, as long as the government does not discriminate against a class of defendants, it may choose to prosecute under either act. *Id*.

The Court also was not persuaded by *Dalton's* alternative ruling "that the effective ban on machine guns made after May 1986 'undercut the constitutional basis of registration which had been the rule since' the National Firearms Act was originally upheld under Congress' power to tax." *Id*. (quoting *Dalton*, 960 F.2d at 125; citing *Sonzinsky v. United States*, 300 U.S. 506 (1937)). The Fourth Circuit specifically found:

> Notwithstanding the effective ban on machine guns made after 1986, the making of even illegal machine guns continues to be taxed. *See* 26 U.S.C. § 5821; *cf*. *Dalton*, 960 F.2d at 125 (recognizing government's assertion that it still taxes the making of illegal machine guns). The court in *Dalton* considered the collection of a making tax irrelevant to a prosecution for possession and transfer without requisite registration, if possession and transfer are not taxed. *Id*. But this is too crabbed a view of the purposes of

> requiring registration and authorizations for possession and transfer of firearms subject to a making tax. For clearly, knowing the chain of possession and transfer assists in determining who made the firearm and hence is "supportable as in aid of a revenue purpose."

*Id.* at 183-84 (quoting *Sonzinsky*, 300 U.S. at 513) (other citation omitted).

Applying *Jones* to this case, the Court finds Defendant's arguments also fail. The defendant is charged under the NFA with possessing a Molotov Cocktail, an unregistered firearm as defined under § 5845(a) as a destructive device.[9] Although Defendant argues the indictment should be dismissed because he cannot register a Molotov Cocktail and its parts (consisting in this case of a Juicy Juice bottle, an accelerant, and a wick) have no taxable value, the Court disagrees with his conclusion. The Fourth Circuit made clear in *Jones* that it rejected the reasoning relied upon in *Dalton*. In addition, the Fourth Circuit specifically noted that the making tax found in § 5821 supports the revenue purposes of the NFA and "the collection of a making tax [is not] irrelevant to a prosecution for possession and transfer without requisite registration, [even] if possession and transfer are not taxed." *Id*. at 183. Pursuant to § 5821, a $200 tax must be paid "upon the making of a firearm" by the person who made such firearm. As the definition of a firearm includes a destructive device, there can be no doubt that the Molotov Cocktail used in this case would be subject to the making tax. Thus, under *Jones*, the Government may pursue prosecution under the NFA for possession of a Molotov Cocktail despite the fact it cannot be registered.

---

[9]The term firearm under § 5845(a) includes a destructive device. A destructive device as defined in subsection (f) includes "(1) any explosive [or] incendiary . . . (A) bomb, (B) grenade, . . . or (F) similar device" 26 U.S.C. § 5845(f), in part.

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss. [Doc. No. 30].

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

        ENTER:    June 14, 2010

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE