IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:10-00039

CHARLEY GOLDEN MYERS

**MEMORANDUM OPINION AND ORDER**

On July 2, 2010, the Court held a pre-trial hearing in the instant matter. During the hearing the Court heard argument and evidence regarding three of the parties' motions. For reasons explained on the record, the Court **DENIES** Defendant's Second Motion *in Limine* (Doc. 50). As explained below, the Court **GRANTS** Defendant's Motion *in Limine* to Prohibit Expert Testimony of Canine Handler (Doc. 56) and **DENIES as moot** Defendant's Motion *in Limine* to Prohibit the Government from Introducing Certain Expert Opinions from Forensic Chemist (Doc. 62).

**Background**

On February 24, 2010, Defendant was indicted for possession of a Molotov Cocktail, in violation of 26 U.S.C. § 5845(a). On June 15, 2010, the United States filed a notice of intent to introduce the testimony of Captain Steve Ellis of the Huntington Fire Department concerning the response of the department's canine in the investigation of an attempted arson. Allegedly the canine gave an alert, which indicated to its handler the presence of an ignitable liquid on Defendant's shoes, left pants leg, left jacket sleeve and the right front floor area of Defendant's car. Although the canine search of Defendant's clothing was conducted on or about March 23, 2009, laboratory testing of the clothing did not take place until on or about June 14, 2010. The results of that test were

negative for the presence of ignitable fluids. Despite the negative lab results, the United States sought to introduce testimony concerning the canine's alert as substantive evidence for the purpose of showing ignitable liquid on Defendant's clothing.

On June 16, 2010, the United States filed notice to introduce testimony of West Virginia Police Forensic Chemist David R. Gaskins concerning his forensic examination of Defendant's clothing that was subject to the canine search. Mr. Gaskins was expected to explain the negative lab results by informing the jury that any ignitable liquid on Defendant's clothing would likely have evaporated in the time between the March 23, 2009 canine search and the June 14, 2009 laboratory testing. Defendant argues that this testimony would only serve to bolster the results of the canine search, which he contends is unreliable without laboratory validation.

Captain Ellis testified about canine training and certification during the hearing, as well as the specific search of Defendant's clothing on March 23, 2009. Ellis explained that his dog, Ms. O'Leary, had been trained and certified through a five-week course ten years ago. This certification was specific to accelerant detection – as explained by Captain. Ellis, the detection of a broad range of ignitable liquids. Ms. O'Leary's certification had been renewed annually for each of the last ten years. In addition, Ms. O'Leary was subject to a daily training regimen. During work and training her handler rewarded her for every positive indication with a food reward. Captain Ellis explained that this was the only substantial food Ms. O'Leary received during the day.

Captain Ellis was cross-examined by Defendant, predominantly on the guidance provided by the National Fire Protection Association (NFPA) 921 Guide for Fire and Explosion Investigations. Captain Ellis agreed that this guide served to define standards for fire and explosion investigations, including work with canines. Among the guide's relevant provisions pointed out by

Defendant is § 1.1, which defines the scope of the guidance document: "This document is designed to assist individuals who are charged with the responsibility of investigating and analyzing fire and explosion incidents and rendering opinions as to the origin, cause, responsibility, or prevention of such incidents." The guide establishes the role of canines and their handlers in fire and explosive investigations as "assisting with the location and collection of samples." NFPA 921 § 16.5.4.7. The guide goes on to provide that "[i]n order for the presence of absence of an ignitable liquid to be scientifically confirmed in a sample that sample should be analyzed by a laboratory . . ." *Id.* at § 16.5.4.7.1. Also that, "[a]ny canine alert not confirmed by laboratory analysis should not be considered validated." *Id.* at § 16.5.3.

Captain Ellis agreed with each of the standards listed above. He also testified that it was the regular practice for the fire investigator to send samples to a laboratory after a positive indication by a canine if such a sample was to be used as evidence of a crime. Despite this, he believed that the positive alert by Ms. O'Leary on Defendant's clothes was reliable. He explained that he had worked closely with Ms. O'Leary for ten years, had seen her give thousands of positive indications in training and in prior work and had not known her to give a false positive indication. He also testified that he had been certified as an expert and allowed to testify regarding dog handling and canine investigation in both West Virginia Magistrate Court and West Virginia State Circuit Court.

**Analysis**

Rule 702 of the Federal Rules of Evidence provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has made clear that it is a district court's duty to play a gate-keeping function in deciding whether to admit or exclude expert testimony: "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant but reliable." *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993). "The touchstones for admissibility under Daubert are two: reliability and relevancy." *United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) (citing *Daubert*, 509 U.S. at 597; *Kumho Tire Co., Ltd. v. Carmichael* 526 U.S. at 152).

The *Daubert* Court enunciated a list of five factors that courts may use to assess the reliability of expert testimony: "(1) whether the particular scientific theory 'can be (and has been) tested;' (2) whether the theory 'has been subjected to peer review and publication;' (3) the 'known or potential rate of error;' (4) the 'existence and maintenance of standards controlling the technique's operation;' and (5) whether the technique has achieved 'general acceptance' in the relevant scientific or expert community." *Crisp*, 324 F.3d at 266 (quoting *Daubert*, 509 U.S. at 593-94). This five factor test is non-exhaustive and the inquiry itself "flexible." *Daubert,* 509 U.S. at 593-94. The burden of producing evidence as to reliability and relevancy, however, rests upon the

party seeking to introduce the expert testimony. *Maryland Cas. Co. v. Themo-O-Disc., Inc.* 137 F.3d 780 (4th Cir. 1998).

In this case it is the United States that seeks to introduce technical and/or scientific evidence regarding the canine search and the subsequent forensic laboratory testing of Defendant's clothing. As such, it is the United States which bears the burden of production on the issues of relevancy and reliability. The United States, however, has provided little on which the Court can base a reasoned and principled application of the *Daubert* factors. It has pointed to scant, if any, evidence regarding the general acceptance, standard, or testing of canine searches used for identifying ignitable liquids. While it did provide specific (and rather extraordinary) evidence as to the error rate of Ms. O'Leary, the Court must balance this testimony with the fact that testing was conducted and did not support the findings of the canine search.

Defendant provided a significant amount of evidence of general standards and acceptance on the use of canines in fire and explosive investigations, primarily from provisions of the NFPA guidebook. This guidebook itself serves as the only publication available to the Court concerning the methods used. It was admitted by Captain Ellis to be a source of accepted standards in the field. It is also an indication of the generally accepted methods, techniques and limitations of the use of canines in this manner.

The techniques used by Captain Ellis were in direct contradiction of many of the provisions of this NFPA guide. Most notably, the positive alert by the dog was not confirmed by a forensic lab and, therefore, according to the guide "should not be considered validated." NFPA Guide 921 at § 16.5.3. Because of its inconsistency with the guidebook, the Court must consider the techniques used by the proffered expert canine handler as contrary to generally accepted standards and practices

in the field. Moreover, the use of the dog alert as substantive evidence is beyond the accepted scope and application of the technique as described by the NFPA guide. *See id.* § 16.5.4.7. (describing the role of canine investigation as "assisting with the location and collection of samples" for laboratory testing). Use of expert testimony beyond its proper application and scope is neither relevant nor helpful to the trier of fact.

Based on the evidence provided, the Court must exercise its gate-keeping function and conclude that the testimony of Captain Ellis regarding the canine search of Defendant's clothes does not meet the *Daubert* standards for relevancy and reliability. As such, Defendant's evidence to Defendant's Motion *in Limine* to Prohibit Expert Testimony of Canine Handler is **GRANTED**. Captain Ellis will not be permitted to testify at trial as an expert canine handler. Because the proffered testimony of the United State's Forensic Chemist would have been dependant upon the testimony of the canine handler, such evidence is no longer relevant. The United States is **DIRECTED** not to elicit testimony from forensic chemist David Gaskins without first seeking leave of the Court. The Defendant's Motion *in Limine* to Prohibit Expert Testimony of Canine Handler (Doc. 56) is **DENIED as moot.**

**Conclusion**

For reasons explained on the record, the Court **DENIES** Defendant's Second Motion *in Limine* (Doc. 50).  As explained below, the Court **GRANTS** Defendant's Motion *in Limine* to Prohibit Expert Testimony of Canine Handler (Doc. 56) and **DENIES as moot** Defendant's Motion *in Limine* to Prohibit the Government from Introducing Certain Expert Opinions from Forensic Chemist (Doc. 62).  The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER: July 8, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE